UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,

v.                                  Case No. 06-20663-22

VINCENT WYNN,                    HON. AVERN COHN

      Defendant-Petitioner.

_____/

## MEMORANDUM AND ORDER
## DENYING PETITIONER'S MOTION TO VACATE UNDER 28 U.S.C. § 2255 (Doc. 859) AND DENYING A CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2255.  Defendant-Petitioner Vincent

Wynn (Wynn) contends that the sixty three (63) month sentence imposed on him

following his guilty plea to money laundering violates his constitutional rights.

Specifically, Wynn contends that he was deprived of his Sixth Amendment right to

effective counsel.  For the reasons that follow, the motion will be denied.[1]

### II. Background

On April 17, 2008, Wynn, along with others, was charged with two counts of

money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(1), § 956(a)(1)(B)(1).  Wynn

filed a motion to sever, which was granted.  (Doc. 324).

---

[1]Wynn also requests a hearing.  However, the motion papers, together with the files and record, conclusively show that Wynn is not entitled to relief.  Therefore, Wynn's request for a hearing is DENIED.  See United States v. Johnson, 327 U.S. 106, 111 (1946); Baker v. United States, 781 F.2d 85, 92 (6th Cir. 1986).

On November 24, 2008, Wynn's first court appointed counsel, Henry Scharg, was permitted to withdraw.  (Doc. 365).  Scharg stated that Wynn raised concerns that counsel was not providing effective assistance which led to a breakdown in attorney-client relationship.

On March 29, 2009, Wynn's second court appointed counsel, Patrick Cleary filed a motion to dismiss the indictment (Doc.467) and later filed a motion under Fed R Crim. P. 12(d) (Doc. 485).  The Court denied both motions.  (Docs. 478, 505)

August 7, 2009, Wynn appeared with his lawyer at a plea hearing.  At the hearing, Wynn said he was satisfied with his lawyer, Cleary, and that he discussed with his lawyer the charges against him in Count 2.  Wynn also affirmed that he was aware that the maximum punishment under the law for the offense was 20 years, and his understanding of the plea agreement was a range from "108-135 months," with his lawyer unable to argue "anything lower than 108 months."  Wynn plead guilty under a plea agreement (Doc. 554), which provided he plead guilty to Count 2 in exchange for the dismissal of Count I.  The plea agreement also stated that Wynn "conspired with others to launder more than $1,000,000 in cocaine proceeds."  Wynn admitted at the plea hearing that he "accept[ed] substantial sums of money from [the] organization" that was engaged in the drug trade, Black Mafia Family, and converted that money into cashiers' checks and mortgage payments "with the intent to conceal or disguise the source, ownership, and control of that money."  Following the plea hearing, Wynn participated in two debriefing sessions with federal agents.

On April 1, 2010, Cleary filed a sentencing memorandum, arguing that Wynn at first thought Black Mafia Family was actually Black Family Entertainment, a rap and

2

hip-hop music recording business, not a criminal business.  Despite the restrictions in the plea agreement, Cleary also requested a below the guidelines sentence.  (Doc. 675).

Days later, on April 6, 2010, Wynn retained new counsel, Tony Axam, who entered an appearance and filed a motion to withdraw Wynn's guilty plea.  (Doc. 677).

On June 22, 2010, the Court held a lengthy hearing on the motion to withdraw the guilty plea.  At the hearing, Wynn argued that his plea was not voluntary or informed.  Wynn also argued that he asserted to prior counsel that he was innocent, but prior counsel failed to prepare for trial and investigate his case.  Wynn described the delay in filing a motion to withdraw the plea as a result from an understanding that during the two debriefing sessions, the federal agents would realize Wynn's innocence, and understand that he was financially unable to retain his own counsel.

The Court denied Wynn's motion to withdraw the plea, finding that the record reflected that the defendant was fully aware of the charges against him, the severity of the guidelines, and the consequence of going to trial.  (Doc. 713).  At the hearing, the Court noted that "Mr. Cleary, his counsel, testified, [Wynn] was fully aware of all of the circumstances of the government's case and was fully advised of what the government's proofs were and voluntarily determined that he should plead guilty after his effort at obtaining what the Court can only conclude was irrelevant evidence was denied by the Court."  (Docs. 741)

The presentence report recommended an offense level of 32, criminal history category II, which produced an advisory guidelines range of 108-135 months.  The Court, however, computed the guidelines more favorably to Wynn, giving him a 3-level

3

reduction for acceptance of responsibility, a 3-level reduction for being only a minor participant, (offense level of 26), and a criminal history category of I. This produced an advisory guideline range of 63-78 months. The Court sentenced Wynn to seventy (70) months. (Doc. 741).

The Court later determined that Wynn did not have the proper opportunity to allocute at sentencing, so another sentencing hearing was set for July 20, 2010.

On the morning of July 20, 2010, Wynn filed a motion for reconsideration, but did not request time for the Court to review the motion. (Doc. 712). The Court denied the motion (Doc. 715) and went forward with the sentencing hearing. After considering all of the relevant sentencing factors and giving Wynn an opportunity to allocute, the Court sentenced Wynn to sixty three (63) months imprisonment, the "bottom of the guideline range."

Wynn filed an appeal to the Court of Appeals for the Sixth Circuit, claiming that the Court erred in refusing to allow him to withdraw his plea and claiming counsel was ineffective. The Court of Appeals for the Sixth Circuit affirmed Wynn's conviction and sentence. United States v. Wynn, 663 F.3d 847, 850 (6th Cir. 2011). The Supreme Court denied certiorari. (Doc. 839). Wynn then filed the instant motion under § 2255. (Doc. 859).

### III. Legal Standard

#### A.

Title 28 U.S.C. § 2255 provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States. . .or that the sentence

4

was in excess of the maximum authorized by law, or is otherwise subject to
collateral attack, may move the court which imposed the sentence to vacate, set
aside or correct the sentence.

To prevail under § 2255, petitioner must show a "fundamental defect which inherently

results in a complete miscarriage of justice." United States v. Timmreck, 441 U.S. 780,

783 (1979) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

To prevail on a claim for ineffective assistance of counsel, a petitioner must show

(1) that his counsel's performance was constitutionally deficient in that the performance

"fell below an objective standard of reasonableness under prevailing norms" and (2) that

he was prejudiced by his counsel's errors. Magna v. Hobauer, 263 F.3d 542, 547 (6th

Cir. 2001) (citing Strickland v. Washington, 466 U.S.668, 687-88 (1984)).  In order to

establish prejudice, petitioner must demonstrate that "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." Strickland, 466 U.S. at 694.

IV.  Analysis

A.

Wynn argues that he was denied effective assistance of counsel because his

counsel allowed the plea agreement to state that the amount of money involved in the

money laundering scheme was one million dollars and failed to object to the

presentence report which used this amount in calculating Wynn's guidelines range.  As

a result, Wynn argues that he was given a higher sentence.  Wynn says that the one

million dollars resulted in a 16 point enhancement.  The presentence report calculated

his guideline range as 98-105 months.  Without the enhancement, Wynn says his

guideline range would be 15-21 months.  Wynn therefore says he would have received

5

far less than the 63 months had counsel objected to the amount of money laundered.[2]

The government argues that the Sixth Circuit has already decided this issue and therefore Wynn cannot raise it again on collateral review.  The government also argues that the claim fails on the merits because Wynn stipulated to the amount of money involved.

B.

As noted above, Wynn raised an unsuccessful a claim of ineffective assistance on direct appeal.[3]  Wynn specifically alleged that: (1) counsel failed to seek certain exculpatory evidence; (2) he failed to fully explain the plea agreement to Wynn; (3) he failed to sufficiently advise Wynn regarding the calculation of the amount of money noted in the plea agreement by the government; and (4) he failed to move to dismiss the case on the basis that it was a vindictive prosecution.

The Sixth Circuit considered and rejected essentially the same claim Wynn now makes regarding the amount of money involved.  The Sixth Circuit explained:

> With regard to his claims that counsel did not properly advise him concerning the plea agreement or concerning the calculation of money involved in the laundering scheme, Wynn has failed to show that counsel's actions were unreasonable.   A defendant "has a right to be informed about the plea agreement," Johnson v. Duckworth, 793 F.2d 898, 901 (7th Cir.1986), and counsel's "failure to notify his client of a prosecutor's plea offer constitutes

---

[2]The government disagrees with this calculation.  The government says that without the one million dollar amount the guideline range would only be reduced by 2 levels not 16 levels.

[3]The Sixth Circuit noted the general rule that ineffective assistance of counsel claims are not ordinarily addressed on direct appeal.  However, the Sixth Circuit determined that the record was sufficiently developed so as to enable a decision on the merits of the claim.  See United States v. Gardner, 417 F.3d 541, 545 (6th Cir. 2005); United States v. Williams 612 F.3d 500, 508 (6th Cir. 2010).

6

ineffective assistance of counsel...." Griffin v. United States, 330 F.3d 733, 737 (6th Cir.2003) (citations omitted).  Wynn's counsel informed his client of the plea offer and, as Wynn's attorney testified at the June 2010 hearing, he reviewed the entire plea agreement with Wynn "word for word."  Wynn also testified that he understood the terms of the agreement and the consequences of his plea.  Wynn has failed to show that his attorney's advice regarding the plea agreement was deficient.  **Wynn's counsel also testified that he had evaluated the amount involved in the scheme to be well over a million dollars.  Therefore, his advice to Wynn to accept the million dollar amount in the plea agreement—rather than risk the possibility of the prosecution claiming a much larger amount at trial—was objectively reasonable**.  See Pough v. United States, 442 F.3d 959, 968 (6th Cir.2006) (finding that defense counsel did not perform unreasonably by informing defendant of plea offers from the government, coordinating a plea agreement, and obtaining a deal on behalf of defendant).  We need not reach the prejudice prong of Strickland on these claims because counsel did not perform unreasonably.

Wynn, 663 F.3d at 851-52 (emphasis added).

Wynn offers no exceptional circumstances, or an intervening change in the case law which would permit him to relitigate the issue of his attorney's performance regarding the amount of money involved.  See Wright v. United States, 182 F.3d 458, 467 (6th Cir. 1999); Oliver v. United States, 90 F.3d 177, 180 (6th Cir. 1996).  As such, his motion may be denied on this ground.

Moreover, Wynn has failed to show that the lawyer handling his guilty plea performed below an objective standard of reasonableness.  While Wynn says that his lawyer was more concerned with biographical information than the veracity of the amount alleged, the record indicates that his lawyer analyzed the amounts laundered and calculated the total to be far in excess of a million dollars.  Wynn also testified that he understood the terms of the plea agreement and the consequences of his plea.  These facts belie any finding that Wynn received ineffective assistance of counsel regarding the amount of money involved in the scheme.

As the government puts it:

> ... in the plea agreement, Wynn stipulated that he "conspired with others to launder more than $1,000,000 in cocaine proceeds." (R. 554: Plea agreement at p. 2).  Having stipulated to the amount he laundered as well as to the corresponding offense level in the plea agreement, Wynn could not object to that amount.  And since the court of appeals has already decided that the "advice to Wynn to accept the million dollar amount in the plea agreement" was "objectively reasonable," and thus not deficient performance, 663 F.3d at 851-52, it was binding.  No fault can be attached to either lawyer for his failure to object in connection with sentencing to the amount to which Wynn had stipulated.

Response (Doc. 865) at p. 9-10 (footnote omitted).

## V.  Conclusion

For the reasons stated above, Wynn has failed to show a fundamental defect which inherently results in a complete miscarriage of justice.  As such, his motion under § 2255 is DENIED.   Furthermore, reasonable jurists would not debate the Court's assessment of Wynn's claim, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore DECLINES to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2).[4]  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

SO ORDERED.

S/Avern Cohn
UNITED STATES DISTRICT JUDGE

Dated:  February 27, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 27, 2013, by electronic and/or ordinary mail.

S/Sakne Chami
Case Manager, (313) 234-5160

---

[4]The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  See Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. ' 2254.

8